IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| YURI J. STOYANOV | : | |
| | : | |
| v. | : | Civil Action No. DKC 07-1953 |
| | : | |
| RAY MABUS, SECRETARY OF THE NAVY, et al. | : | |

## MEMORANDUM OPINION

Presently pending and ready for review in this employment discrimination case is the motion to dismiss or for summary judgment filed by Defendant Ray Mabus.  (ECF No. 16).  The issues have been fully briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, the motion, which will be construed as one for summary judgment, will be granted.

## I.  Background

This case is one of more than a dozen suits filed by Plaintiff Yuri Stoyanov and his twin brother, Aleksandr, against many of these Defendants.[1]  The Stoyanovs were born in Russia in

---

[1] Individual Defendants in this case include: Charles Behrle, Head of the Carderock Division, Gary Jebsen, Head of Code 70, Kevin Wilson, Head of Code 74, Bruce Crock, Head of Code 743, Joseph Vignali, Head of Code 7207, Ciro Minopoli, Head of Code 75, Roger Ford, Head of Code 7014, Garth Jensen, Deputy Head of Code 70, Donald Clark, Head of Code 713, David Caron, Assistant Counsel to Code 39, Suzanne Friedman, Acting Head of

1955.   Plaintiff has worked as a scientist at the U.S. Navy's Naval Surface Warfare Center, Carderock Division ("NSWCCD") from 1987 to the present.   Aleksandr worked there as a scientist from 1989 to 2003.

In each lawsuit, the brothers allege that they were discriminated against in a variety of ways because of their age, national origin, and in retaliation for filing charges of discrimination.   In this case, as in all others prior, the alleged discrimination and retaliation took the form of denied promotions, undesired work assignments, and restrictions placed on the brothers' ability to pursue claims they were bringing before the Equal Employment Opportunity Commission ("EEOC").

Because the cases Plaintiff and his brother filed had become so voluminous, the court entered an order restricting the brothers to one active case at a time.   (ECF No. 12 in Civil Action No. AMD-06-1244).   Accordingly, this case was placed on the inactive-unassigned docket on August 13, 2007.   (ECF No. 2). It was transferred to the active docket on October 14, 2010. (ECF Nos. 5-6).   In every case in which a dispositive motion has been filed, Plaintiff's claims have either been dismissed or summary judgment has been entered against Plaintiff, and the

---

Code 30, Charles Giacchi, Technical Director of the Naval Surface Warfare Center, and Ray Mabus, Secretary of the Navy.

Fourth Circuit has upheld those decisions.[2]   Plaintiff's case before Judge Bennett covered alleged discrimination during the period from November 1989 through early 2002; Plaintiff's case before Judge Davis complained of alleged discrimination occurring between spring 2002 and December 2002.   Before Judge Quarles, Plaintiff alleged discrimination during the period between spring 2003 and spring 2004.   In Plaintiff's case before Judge Nickerson, he alleged discrimination claims for the time period between March 2004 and July 2004.   In the instant case, Plaintiff alleges many of the same kinds of discriminatory and retaliatory actions as he presented in his previous four suits. This time, he covers the time period between November 2004 and December 2005.

Here, as in the case before Judge Davis and all others, Plaintiff's claims are basically that:

> on the basis [of] his age, national origin and/or retaliation for his having engaged in protected activity, the Navy refused to

---

[2] *See Stoyanov v. Mabus*, No. WMN-07-1863, 2011 WL 4397492 (D.Md. Sept. 20, 2011) *aff'd*, 470 Fed.App'x 128 (4th Cir. 2012); *Stoyanov v. Mabus*, No. WDQ-07-1764, 2009 WL 4884518 (D.Md. Dec. 9, 2009), *aff'd*, 385 Fed. App'x. 297 (4th Cir. June 24, 2010); *Stoyanov v. Winter*, No. AMD-06-1244, 2008 WL 6722765 (D.Md. Aug. 11, 2008), *aff'd*, 305 Fed.App'x. 945 (4th Cir. Jan. 15, 2009), *cert. denied*, --- U.S. ----, 130 S.Ct. 57, (2009) (table citation); *Stoyanov v. Winter*, No. RDB-05-1611, 2007 WL 2359771 (D.Md. Aug. 15, 2007), *aff'd*, 266 Fed.App'x. 294 (4th Cir. Feb. 25, 2008) (table citation), *cert. denied*, 555 U.S. 884 (2008) (table citation).

> promote or reassign plaintiff. Plaintiff
> feels aggrieved by his inability to secure a
> promotion to an ND-5 level position,[3] or a
> reassignment that might lead to a better
> opportunity for such a promotion, in some
> cases because he was allegedly denied the
> opportunity to apply and in others because
> another candidate was selected over
> plaintiff. He essentially argues that every
> occasion on which an ND-5 vacancy became
> available and he was not promoted was an
> incident of discrimination.

*Stoyanov v. Winter*, No. AMD-06-1244, 2008 WL 6722765, at *2

(D.Md. Aug. 11, 2008). He sets out these allegations in

fourteen "claims":

> Claim #1 – Defendants Gary Jebsen, Kevin
> Wilson, and Bruce Crock denied Plaintiff an
> ND-5 Program Manager position that was
> assigned to Sung Han on December 7, 2004.
>
> Claim #2 – Mr. Jebsen denied Plaintiff an
> ND-5 Program Manager position that was
> assigned to Thomas McCain on December 7,
> 2004.
>
> Claim #3 – Defendants Charles Giacchi and
> Charles Behrle denied Plaintiff an ND-5
> Technical Operations Manager position that
> was assigned to Mr. J. Beach on November 15,
> 2004
>
> Claim #4 – Defendants Jebsen, Wilson, and
> Crock denied Plaintiff "incentive demo pay
> points" under the Defense Personnel
> Demonstration Project for fiscal year 2004.
>
> Claim #5 – Mr. Jebsen denied Plaintiff the
> opportunity to apply for an ND-5 Program

---

[3] As then, Plaintiff appears to remain at an ND-4 level
position.

Manager position, when he assigned it to James King on January 5, 2005.

Claim #6 – Defendants denied Plaintiff an ND-5 Manager position, which was assigned to Douglas Garbini on January 11, 2005.

Claim #7 – Defendants Jebsen, Wilson, and Crock harassed for Plaintiff by requiring him to become a small purchase credit card buyer for other employees.

Claim #8 – Defendants Jebsen, Wilson, and Crock harassed Plaintiff by delaying the approval for the publication of an article that Plaintiff co-authored.

Claim #9 – On January 18, 2005, Defendants Jebsen and David Caron denied Plaintiff a fair EEO process when he was required to travel when he was scheduled to take the deposition of a witness for his EEO complaint.

Claim #10 – Defendants Jebsen and Carron denied Plaintiff a fair EEO process and harassed him by requiring him to conduct an inventory on December 29, 2005.

Claim #11 – Mr. Jebsen denied Plaintiff a temporary Program Manager position, which was assigned to Andrew Smith on February 26, 2005.

Claim #12 – Mr. Jebsen denied Plaintiff an ND-5 Engineer position, which was assigned to Marion Pope on March 24, 2005.

Claim #13 – Mr. Jebsen denied Plaintiff an ND-5 Program Manager position, which was assigned to Robert Wingo on March 24, 2005.

Claim #14 – Mr. Jebsen denied Plaintiff a Program Manager position, which was assigned to Joseph Krycia on March 29, 2005.

Based on these claims, Plaintiff asserts fourteen counts:

Count I – Violation of Title VII (National Origin)

Count II – Violation of Title VII (Reprisal)

Count III – Violation of the ADEA

Count IV – Violation of the Whistleblower Protection Act of 1989

Count V – Conspiracy to Violate Civil Rights

Count VI – Aiding and Abetting Violations of Civil Rights Laws

Count VII – Obstruction of Official Process

Count VIII – Abuse of Administrative Power

Count IX – Intentional Infliction of Emotional Distress

Count X – Fraud and Misrepresentation

Count XI – Obstruction of Justice by Defendant David Carron (Implied Private Right of Action)

Count XII – Malicious Abuse of Process

Count XIII – Violation of Plaintiff's constitutional Rights Under the First Amendment

Count XIV – Violation of Plaintiff's Procedural and Substantive Due Process Rights

The Secretary of the Navy, Ray Mabus, and other various supervisors and individuals affiliated with NSWCCD are named as defendants.

## II.  Standard of Review

Defendant's motion is styled as a motion to dismiss or for summary judgment.  Because both parties submit and rely on the substantial record that was developed in the administrative proceedings, the summary judgment standard applies.

Summary judgment may be entered only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).  Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed.R.Civ.P. 56(e)).  "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at

249-50 (citations omitted).   At the same time, the facts that are presented must be construed in the light most favorable to the party opposing the motion.   *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett*, 532 F.3d at 297.

## III. Analysis

In this case, Plaintiff brings many of the same claims and relies on the same theories that were rejected by Judges Bennett, Davis, Quarles, and Nickerson.   Because many of Plaintiff's claims are similar and, although not identical to those raised in previous actions, they do not need to be discussed at length.   *See Stoyanov v. Mabus*, No. WMN-07-1863, 2011 WL 4397492, at *6 (D.Md. Sept. 20, 2011).

Plaintiff also attempts to construe his complaint as asserting claims of constitutional torts, common law, and under the Whistleblower Protection Act.   Nevertheless, as in prior suits, Plaintiff's claims are premised solely on allegations of national origin discrimination, age discrimination, and retribution for EEO activities or complaints about the EEO process itself.   Judge Bennett previously held that "Title VII and the ADEA are the exclusive remedies available to a federal employee complaining of employment discrimination that is based on national origin, retaliation, and age."   *Stoyanov v. Winter*, No. RDB-07-1611, 2006 WL 5838450, at *5 (D.Md. July 25, 2006).   Accordingly, all but the first three counts of Plaintiff's

complaint will be dismissed.  That is, only Plaintiff's claims for national origin discrimination and retaliation under Title VII (Counts I and II) and his age discrimination claims under the ADEA (Count III) will be discussed in detail.[4]

Plaintiff provides no direct evidence of discrimination or retaliation for his remaining ADEA and Title VII claims. Therefore, Plaintiff must rely on the three-part framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under *McDonnell Douglas*, Plaintiff must first demonstrate a *prima facie* case of discrimination.  Once a plaintiff establishes a *prima facie* disparate treatment case, the burden then shifts to the employer to provide some legitimate, non-discriminatory reason for the disputed action. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004).  If the employer can do so, the burden shifts back to the employee, who must demonstrate that the reason offered is, in fact, a pretext for discrimination.  *Id.*  In the end, "[t]he plaintiff always bears the ultimate burden of

---

[4] Additionally, these claims cannot be brought against individuals under Title VII or the ADEA.  *Id.* at *10; *see also Lissau v. S. Food Svc., Inc.*, 159 F.3d 177, 180 (4th Cir. 1998) (holding that "supervisors are not liable in their individual capacities for Title VII violations"); *Birbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510-11 (4th Cir. 1994) (no individual liability under the ADEA).  Accordingly, these claims against Defendants in their individual capacities will be dismissed.

proving that the employer intentionally discriminated against her." *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996).

To establish a *prima facie* case of discrimination based on age or national origin, Plaintiff must show that: (1) he is a member of a protected class; (2) his job performance was satisfactory; (3) he was subjected to an adverse employment action; and (3) similarly situated employees outside of his class received more favorable treatment. *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981) (outlining elements of *prima facie* case for national origin discrimination under Title VII); *Hill v. Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (outlining elements of *prima facie* case for age discrimination under the ADEA) (citing *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 607 (4th Cir. 1999)).

Here, Plaintiff alleges two broad categories of behavior that constitute discrimination. First, he alleges nine failure to promote claims: instances where he believes he was more qualified for an ND-5 position to which someone else was appointed. Second, he complains of a number of his supervisors' actions that he deems to be harassing. Finally, he brings one claim of discrimination based on an unpaid bonus.

**A.    Failure to Promote Claims:  Claims I-III, V-VI, XI-XIV**

In the specific context of a failure to promote claim, to establish a *prima facie* case, Plaintiff must show that he:  (1) is a member of a protected class; (2) applied for the position in question; (3) was qualified for each position; and (4) was rejected for each position under circumstances giving rise to an inference of unlawful discrimination.  *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005).  Plaintiff argues that he should have been promoted in each of the following instances.

**1.    Claim I**

On August 18, 2004, a vacancy announcement was posted for a Deputy Program Manager position in the Non-Acoustics Signature Group, seeking a person with acquisition planning experience, budget, management experience, among other things.  (ECF No. 16, Defs.' Ex. 6, Vacancy Announcement CAR-0016).[5]  Defendant Crock was the selecting official.  He was issued a competitive certificate — a list of candidates not yet at the ND-5 level deemed qualified for the position. (Defs.' Ex. 8, Competitive Cert.).  He was also issued a non-competitive certificate that contained the names of employees who are already employed at the

---

[5] Exhibits in this case were only filed in paper copy. References Defendants' exhibits were filed in conjunction with their motion, ECF No. 16.

grade level of the position. (Defs.' Ex. 7, Non-Competitive Cert.).

A three-person panel considered Plaintiff along with a number of other candidates. They asked all candidates the same questions during the interview. (Defs.' Ex. 13, Question Sheet). After this process, the panel ranked Sung Han highest, and Plaintiff lowest. (Defs.' Exs. 10 through 12). Plaintiff did not understand basic terminology used in the position and as a research scientist, lacked required experience. Crock selected Sung Han over the other candidates. (Defs.' Ex. 13, Crock Decl. at 3).

### 2. Claim II

On August 18, 2004, an announcement for the Deputy Head of the Submarine Design Office was listed, and Plaintiff was listed on a competitive certificate along with seven other candidates. (Defs.' Ex. 16, 17). The position required design knowledge of the Trident Submarine, acquisition, high-level briefing, and program management experience. (Defs.' Ex. 16, Vacancy Announcement CAR-0017). A three member panel evaluated the candidates' resumes and unanimously recommended Thomas McCain, who is four or five years younger than Plaintiff, for the position. The panel rated Plaintiff near the bottom of the list of candidates, concluding that he did not have the appropriate

experience for the position.   (Defs.' Ex. 18, Tarasek Decl. at 2).

### 3.   Claim III

On August 9, 2009, a vacancy announcement was issued for the NSWCCD Technical Operations Manager.   (Defs.' Ex. 21, Vacancy Announcement CAR-0014).   On September 15, 2004, a competitive certificate of sixteen candidates was issued. (Defs.' Ex. 22, Competitive Cert.).   Because this position is the agency's top civilian position, the announcement sought a person able to manage more than 3,600 people across an array of disciplines, with a variety of experience in budgeting and personnel management, as well as technical expertise.   (Defs.' Ex. 21).   A five-member panel ranked the candidates, placing Plaintiff thirteenth among the sixteen and ultimately recommending J. Beach for the position.   (Defs.' Ex. 25, Ranking Sheet).

### 4.   Claim V

In 2002, James King was assigned on detail to the Office of Naval Research.   (Defs.' Ex. 32, Jebsen Decl. at 4).   While there, NSWCCD decided to fill his vacated position with a permanent appointment.   This required Mr. King to be reassigned to another position in the Agency.   He was assigned to fill a position recently vacated by a retiring employee.   The position

was not advertised, and no other employees were permitted to apply for it. (*Id.*).

### 5. Claim VI

The next position that Plaintiff believes he should have been given is an NT-6 Division Head for Operations Department, Resources Protection Division. (Defs.' Ex. 34, Vacancy Announcement CAR-0019). The announcement sought a candidate with experience in security, anti-terrorism, and emergency planning. It further sought candidates with personnel experience. (*Id.*). Dr. Suzanne Friedman, the selecting official engaged in a multi-step process to select a candidate. Dr. Friedman selected Douglas Garbini, whom she deemed to be the most qualified for the position, as reflected during the interview process.[6] Dr. Friedman concluded that Plaintiff's expertise in stealth technology of ships and submarines did not adequately qualify him for the position. (Defs.' Ex. 37, Friedman Decl. at 2-3).

---

[6] Plaintiff requests discovery regarding Mr. Garbini's qualifications. (ECF No. 23-1, at 22). Although no discovery has been taken in this case, the substantial administrative record was submitted with the parties' briefing. Nothing in that record or in Plaintiff's argument regarding Mr. Garbini gives rise to an inference of discrimination that would necessitate additional discovery.

### 6.   Claim XI

Plaintiff also asserts that he was discriminated against when he was passed over in the fall of 2004 to perform a temporary work assignment.   One of Plaintiff's coworkers retired, and Mr. Crock needed an employee to perform a "Verification Validation and Accreditation" ("VV&A") task for a short period of time.   Mr. Crock chose Andrew Smith, also an ND-4, who had VV&A experience.   Mr. Crock declares that no one else, including Plaintiff, had relevant experience to complete the task.   (Defs.' Ex. 42, Crock Decl. at 2).

### 7.   Claim XII

On February 9, 2005, a vacancy announcement was posted for an Acoustic Systems Integration Team Leader in the Electrical and Acoustics Systems/Shock Section of the Virginia class submarine program office.   (Defs.' Ex. 45, Vacancy Announcement CAR-0008).   The announcement required skills in technology and acquisition plans and budgets and personnel management, among other things.   (*Id.*).   Plaintiff was included in a competitive certificate of five candidates and was interviewed.   (Defs.' Ex. 46, Competitive Cert.).     Plaintiff was ranked last by the selection panel in both resume and interview responses.   (Defs.' Ex. 47, Clark Aff., at 3).   The panel concluded that Plaintiff's resume lacked the required experience and that he did not respond to their questions in the interview.   In contrast,

15

Marion Pope, a forty-two-year-old-African-American man, who was selected for the position, had been serving as the Deputy Team Leader in this department for three years, and also served as the acting team leader while the position was vacant. (*Id.* at 2).

### 8.   Claim XIII

On April 15, 2002, an "open and continuous announcement" was advertised.  This type of announcement allows applicants to file a one-time application and resume and thereafter, apply for positions that are announced under it.  On January 28, 2005, Plaintiff applied for the Branch Head position at Code 75. (Defs.' Ex. 53, Vacancy Announcement CAR-004).  The announcement sought candidates with experience in underwater electromagnetic systems, human resources, financial management, and personnel management, among other things.  (*Id.*).  A non-competitive certificate was issued with five candidates, and Plaintiff was included with six other candidates on a competitive certificate. (Defs.' Exs. 54, 55).

A five-member panel interviewed four candidates, including Plaintiff.  The selecting official, Defendant Ciro Minopoli, noted that Plaintiff received mixed reviews from the panel, but was deficient in the technical section of the interview, and that Robert Wingo, the candidate chosen, was the unanimous

selection and highest ranked among the candidates.  (Defs.'Ex. 56, Minopoli Aff., at 2-3).

### 9.  Claim XVI

In 2005, Joe Krycia was laterally assigned to a new position in Code 7014.  (Defs.' Ex. 62, Ford Aff. at 2).  The new position was created because a new ship was being designed and needed someone to manage the program full-time.  Krycia was involved in the very early design of the ship, and the customer commissioning the ship, Naval Sea Systems Command, requested that Krycia be assigned to the position.  No vacancy was created for this position.

### 10.  *Prima Facie* Case

It is doubtful that Plaintiff can establish a *prima facie* case of discrimination regarding any of these claims, because there is nothing in the circumstances surrounding his not being selected that gives rise to an inference of discrimination. Selectees in age discrimination cases must be "substantially younger" than the plaintiff to give rise to an inference of discrimination.  *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996).  For example, in Claims I, II, and XIII, any claim of age discrimination is undermined by Plaintiff's admission that Mr. Han, Mr. McCain, and Mr. Wingo are no more than five years younger than he is.  (ECF No. 23-1 at 11).  *See Jeffers v. Thompson*, 264 F.Supp.2d 314, 328 (D.Md. 2003) (noting

that a replacement who is eleven years younger than plaintiff is substantially younger than plaintiff, but one five years younger is not) (citing *Cramer v. Intelidata Techs. Corp.*, 168 F.3d 481 (4th Cir. 1998) (unpublished table decision) (concluding that a replacement who was "only five years younger" than plaintiff was not substantially younger than plaintiff).

Even if Plaintiff's *prima facie* case of discrimination related to these promotion denials were to be presumed, summary judgment would still be granted on these claims because Defendants have established legitimate, non-discriminatory reasons for Plaintiff's non-selection for each of these positions. As to Claims I through III, VI, XII, and XIII, Plaintiff was not awarded the position because he did not have the requisite amount of skill and experience to qualify him. As to Claims V, XI, and XIV, the agency laterally moved other employees who were more specifically qualified for the open or newly created positions. These constitute legitimate, non-discriminatory reasons that satisfy Defendants' burden of production.

### 11. Pretext

Plaintiff attempts to show that these reasons are all pretextual. His primary argument is based on his own evaluation of his qualifications. Throughout his briefs and his declarations, as to each position he avers: "Any reasonable

18

mind can see Plaintiff's qualifications and experience were far superior than those of" the candidate selected.  (ECF No. 23-1 at 9) (as to Mr. Han); (*id.* at 14) (as to Mr. McCain); (*id.* at 17) (as to Mr. Beach); (*id.* at 20) (as to Mr. King); (*id.* at 21) (as to Mr. Garbini); (*id.* at 32) (as to Mr. Smith); (*id.* at 35) (as to Mr. Pope); (*id.* at 38) (as to Mr. Wingo); (*id.* at 38) (as to Mr. Krycia).  On occasion, Plaintiff avers, without support, that his educational qualifications are superior to another candidates (*see, e.g.*, *id.* at 21) (pointing out that Mr. Garbini only holds a bachelor's degree), or, again without support, that he has more experience working at NSWCCD than another candidate (*see, e.g.*, *id.* at 38) (noting that Mr. Krycia has twelve years less experience than Plaintiff).  More importantly, Plaintiff does not offer an explanation as to why his particular skills or experience qualify him for a particular position.

An employer may establish the qualifications for a position, and to establish pretext, a plaintiff must show that he was more qualified with respect to those qualifications.  *See EEOC v. Fed. Reserve Bank of Richmond*, 698 F.2d 633, 671 (4th Cir. 1983) (holding that an employer has the right to establish the qualifications that are "necessary or preferred" for a position, and that the plaintiff must show that he is superior to the selected candidate to establish pretext), *rev'd in part on other grounds*, *Cooper v. Fed. Reserve Bank of Richmond*, 467

19

U.S. 867 (1983).  Plaintiff does not show that he is objectively superior to the selected candidates for these positions. Further, Plaintiff's own assessment of his qualifications, without support, is irrelevant.  "It is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." *Evans*, 80 F.3d at 960-61 (internal quotation marks and citations omitted).

Additionally, many of the officials who selected the candidates who ultimately filled these positions declared that they never met Plaintiff and, at the time of selection, were unaware of, or never discussed, Plaintiff's age, national origin, or prior EEO activity.  (Defs.' Ex. 18, Tarasek Decl. at 2; Ex. 20, Vignali Decl. at 2; Ex. 37, Friedman Decl. at 1).

Plaintiff's second argument regarding prextext is that those involved in the promotion decisions were lying to cover up a conspiracy of discrimination against him.  With respect to every claim, Plaintiff argues that Defendants' declarations are fraudulent and are part of a larger scheme "to cover-up intentional discrimination."  (ECF No. 23-1, at 8).  These broad assertions do not support Plaintiff's assertion of pretext.

Because Defendants have established a legitimate nondiscriminatory reason for each promotion decision, and Plaintiff fails to show pretext, they are entitled to summary judgment as to these claims.

**B.    Harassment and Retaliation Claims:   Claims VII-X**

Plaintiff asserts that he was harassed by his superiors on multiple occasions, and that the harassing behavior constitutes both harassment under a theory of disparate treatment and retaliatory harassment for his prior EEO activity.[7]

**1.    Claim VII**

The first instance of harassing behavior that Plaintiff complains of being subject to occurred in December 2004, when Mr. Crock directed Plaintiff to become qualified to be a government purchase credit card holder.  Mr. Crock declares that this has no negative impact on Plaintiff's employment, but rather qualifies him to perform additional work in other areas.

---

[7] Plaintiff also refers to these actions as creating a "hostile work environment."   To create a hostile work environment under Title VII, however, the harassment must be "sufficiently severe or pervasive to alter the conditions of [] employment and [] create an abusive environment."   *Baqir v. Principi*, 434 F.3d 733, 745–46 (4th Cir. 2006).   The "standard for proving an abusive work environment is intended to be a very high one because the standard is designed to filter out complaints attacking 'the ordinary tribulations of the workplace.'"   *Wang v. Metro. Life Ins. Co.*, 334 F.Supp.2d 853, 864 (D.Md. 2004).   To survive summary judgment, the conduct at issue supporting a hostile work environment claim must be far more severe than that of "a merely unpleasant working environment."   *Hopkins v. Balt. Gas & Elec. Co.*, 77 F.3d 745, 753 (4th Cir. 1996).   "Courts usually only allow hostile work environment claims to proceed where the discriminatory abuse is near constant, oftentimes of a violent or threatening nature, or has impacted the employee's work performance."   *Tawwaab v. Va. Linen Serv., Inc.*, 729 F.Supp.2d 757, 777 (D.Md. 2010).   Plaintiff's allegations do not support a hostile work environment claim.

(Defs.' Ex. 15, Crock Decl. at 4).   Indeed, many of Plaintiff's coworkers at the same grade underwent the same training.   (Defs. Ex. 11, Wilson Decl. at 4).

    **2.   Claim VIII**

In 2004, Plaintiff requested that Mr. Crock and Mr. Wilson review an article that he co-authored and approve to have it released publicly.   (Defs.' Ex. 15, Crock Decl. at 4).   After Mr. Crock approved it, he forwarded the article to Mr. Wilson. Mr. Wilson did not receive the article, and he was forwarded another copy.   (*Id.*).   Mr. Wilson and Mr. Crock provided comments and edits to Plaintiff for him to implement before they would approve the article for release.   This never occurred. (*Id.*).

Regarding these claims, the alleged harassment does not rise to the level of an "adverse employment action" that could support a disparate treatment claim based on national origin or age discrimination.   "An adverse employment action is a discriminatory act that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.   The mere fact that a new job assignment is less appealing to the employee, however, does not constitute adverse employment action.'"   *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (quoting *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 208, 219 (4th Cir. 2004)).   Something that "merely

causes an employee irritation or inconvenience, but does not affect a term, condition, or benefit of her employment, is not an adverse employment action." *Spriggs v. Pub. Serv. Comm'n of Md.*, 197 F.Supp.2d 388, 393 (D.Md. 2002). Clearly, receiving additional training to become a credit card purchaser and being subject to an innocent delay in having an article approved for publication does not rise to the level of affecting a term, condition, or benefit of Plaintiff's employment. Accordingly summary judgment is appropriate in Defendants' favor on these claims.

**3. Retaliation**

Plaintiff also alleges these incidents of harassment constitute retaliation. Under Title VII, to establish a *prima facie* case of retaliation, Plaintiff must show that: (1) he engaged in a protected activity, (2) his employer acted adversely against him, and (3) the protected activity was causally connected to the adverse action. *See Holland*, 487 F.3d at 218. Unlike a discrimination claim, a plaintiff need not establish an "ultimate employment decision" to make out his *prima facie* case; rather, he must show only that the action would be seen as materially adverse through the eyes of a reasonable employee. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Actions like "petty slights, minor annoyances, and simple lack of good manners" are insufficient to

support a retaliation claim, even under this lower standard. *Id.*

Again, Plaintiff does not make out a *prima facie* case of retaliation. Both claims fail on the second prong. A reasonable employee would not find that additional credit card purchasing training or a minor delay in article approval are materially adverse to Plaintiff's employment. There is nothing inappropriate or unlawful about requiring Plaintiff to undergo additional training so that his job duties can expand. Additionally, the delay that Plaintiff suffered in having his article approved was minor, and Plaintiff never completed the required revisions, which was the ultimate cause of it not being published.

### C. Bonus Payment: Claim IV

NSWCCD awards bonus pay to employees in a competitive system based on relative performance. (Defs.' Ex. 28, Demo Pay Brochure). Employees submit a self-assessment, which supervisors evaluate in deciding whether to award a bonus. Mr. Crock, as Plaintiff's first level supervisor declared that he did not issue Plaintiff a bonus because nothing in his work performance went above and beyond his normal work duties. (Defs.' Ex. 15, Crock Decl. at 5). Plaintiff appealed the lack of bonus to Mr. Wilson, his second level supervisor, who

affirmed Mr. Crock's decision.   (Defs.' Ex. 11, Wilson Decl. at 3-4).

    As a matter of law, "the non-receipt of a discretionary bonus does not constitute an adverse employment action" to support a claim of discrimination under Title VII.  *Schamann v. O'Keefe*, 314 F.Supp.2d 515, 531 (D.Md. 2004) (citing *Rabinovitz v. Pena*, 89 F.3d 482, 488-89 (7th Cir. 1996) (lowered performance evaluation, which prevented plaintiff from obtaining discretionary bonus, did not constitute adverse employment action under Title VII); *Harrington v. Harris*, 118 F.3d 359, 366 (5th Cir. 1997) (employer's failure to award discretionary merit pay increases did not constitute adverse employment action)).

    Furthermore, Plaintiff cannot establish a *prima facie* case of retaliation on the basis of this unpaid bonus.   The bonus payment was discretionary, and Defendants aver that seven employees in Plaintiff's division also did not receive this bonus during this time period.   "An employer may enforce generally applicable employment policies against its employees without creating a cause of action for retaliation." *Wells v. Gates*, 336 Fed.App'x 378, 385 (4th Cir. 2009).   Accordingly, summary judgment is appropriate in Defendants' favor on this claim.

**D.   Claims IX and X:  Interference with EEO Process**

Plaintiff next argues that Defendants impeded his ability to pursue his EEO claims on two occasions:  by requiring him to travel to California in January 2005 and perform an inventory of safes in December 2004.  These claims were raised in Plaintiff's EEO proceedings that gave rise to his complaint for which summary judgment was entered in the Defendants' favor in 2009.  *See Stoyanov v. Mabus*, No 07-1764, 2009 WL 4884518, at *3 n. 31 (D.Md. Dec. 9, 2009) (noting that the suit covers "EEO complaints Agency Nos. . . . 04-00167-008125, 04-00167-008298, 04-00167-009430, [and] 04-00167-008004"); (Defs.' Ex. 41, Motion for Sanctions in EEO Proceedings Nos.:  04-00167-008125, 04-00167-008298, 04-00167-009430, 04-00167-008004) (disputing travel to California and request to perform inventory of safes).

For Defendants to establish that Plaintiff's claims are barred by the doctrine of collateral estoppel, they must show:

> that "the issue sought to be precluded is identical to one previously litigated" ("element one"); (2) that the issue was actually determined in the prior proceeding ("element two"); (3) that the issue's determination was "a critical and necessary part of the decision in the prior proceeding" ("element three"); (4) that the prior judgment is final and valid ("element four"); and (5) that the party against whom collateral estoppel is asserted "had a full and fair opportunity to litigate the issue in the previous forum" ("element five").

*Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 217 (4th Cir. 2006) (applying doctrine to decision issued by Administrative Law Judge) (citing *Sedlack v. Braswell Servs. Group, Inc.*, 134 F.3d 219, 224 (4th Cir. 1998)).   Here, Defendants rely both on the case before Judge Quarles and on Plaintiff's case before the EEOC.   Plaintiff briefed and argued these specific factual claims before the Administrative Law Judge ("ALJ") at the EEOC, and the ALJ denied Plaintiff relief, satisfying the first two elements.   Next, these two claims form the factual basis of Plaintiff's motion before the ALJ.   Accordingly, element three is satisfied.   Finally, the ALJ's decision is valid and final, and Plaintiff had full opportunity to litigate the claim there, and when he pursued those EEO complaints before Judge Quarles and the Fourth Circuit.   Accordingly, Counts IX and X will be dismissed.   *See Stone v. Instrumentation Lab. Co.*, 591 F.3d 239, 246 (4th Cir. 2009) (noting that "district courts generally have the ability to give preclusive effect to final administrative rulings") (citing *Collins*, 468 F.3d at 217).

## IV. Conclusion

For the foregoing reasons, the motion for summary judgment filed by Defendants will be granted. A separate Order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge